IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| KEVIN FREEMAN, SR., as parent and legal guardian of his son, K.F., a minor, | ) ) ) | |
| Plaintiff, | ) ) | No. |
| v. | ) ) | Judge |
| CITY OF MILWAUKEE, Milwaukee Police Chief EDWARD FLYNN, Milwaukee Police Captain EDITH HUDSON, Milwaukee Police Sergeant JASON MUCHA, Former Milwaukee Police Officer MICHAEL VAGNINI, Milwaukee Police Officer JACOB KNIGHT, and Unknown Milwaukee Police Officers, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | Jury Demand |

**COMPLAINT**

Plaintiff, K.F., a minor, by and through his parent and legal guardian, KEVIN FREEMAN, SR., by his attorneys, People's Law Office and The Shellow Group, for his complaint against Defendants CITY OF MILWAUKEE, Milwaukee Police Chief EDWARD FLYNN, Milwaukee Police Captain EDITH HUDSON, Milwaukee Police Sergeant JASON MUCHA, former Milwaukee Police Officer MICHAEL VAGNINI, Milwaukee Police Officer JACOB KNIGHT, and Unknown Milwaukee Police Officers, states:

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Milwaukee is a municipal corporation located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**Parties**

4. Plaintiff Kevin Freeman Sr. is the father of the minor African American Plaintiff, K.F., and is his legal guardian. Plaintiff Kevin Freeman Sr. resides in Milwaukee, Wisconsin and sues as the legal guardian of the minor, K.F.

5. Defendant City of Milwaukee is a Wisconsin municipal corporation and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment. Defendant City of Milwaukee is additionally responsible for the policies and practices of the Milwaukee Police Department.

6. Defendant Edward Flynn is and was at all times relevant to this action, the Chief of the Milwaukee Police Department, acting under color of law and within the scope of his employment. Defendant Flynn is being sued in his individual and official capacities.

7. Defendant Edith Hudson was at all times relevant to this action the Captain of the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of her employment. Defendant Hudson is being sued in her individual capacity.

8. Defendant Jason Mucha was at all times relevant to this action a sergeant in the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of his employment. Defendant Mucha is being sued in his individual capacity.

9. Defendants Michael Vagnini and Jacob Knight were at all times relevant to this action employed as police officers in the Milwaukee Police Department. Each of these Defendants is being sued in his individual capacity.

10. Unknown Defendants are current and/or former officers of the Milwaukee Police Department.

11. Each of the individual defendants named above engaged in the conduct complained of under color of state law and in the course and scope of his or her employment as a Milwaukee police officer.

**Facts**

12. In December of 2011, Plaintiff K.F. was fifteen years old and a freshman in high school.

13. On December 16, 2011, at approximately 10:30 p.m., Plaintiff K.F. was in the passenger seat of his friend's car as they were driving on 26th Street in Milwaukee.

14. Defendants Vagnini, Knight and one or two other unknown Milwaukee police officers pulled the car over and ordered Plaintiff K.F. and his two friends to get out of the car.

15. Defendants had no probable cause to believe that Plaintiff K.F. had committed or was committing any offense.

16. Defendant Vagnini, who had no probable cause or reasonable suspicion that Plaintiff K.F. possessed contraband on or about his person, forced Plaintiff K.F. up against a gate, and, in a public thoroughfare, with no privacy, reached his hand inside Plaintiff K.F.'s pants and underpants, grabbed and squeezed Plaintiff K.F.'s testicles and penis, and then stuck his hand between Plaintiff K.F.'s buttocks, touching his anus.

17. Defendant Vagnini did not recover any drugs or contraband from his search of Plaintiff K.F.

18. Defendant Vagnini handcuffed and arrested Plaintiff K.F., brought him to the police station and falsely issued him a ticket for an ordinance violation.

19. Defendant Knight and the Unknown Defendant Officers stood by, watching, and took no action to intervene with Defendant Vagnini's invasive and unreasonable search of Plaintiff K.F., even though they had the duty, ability, and opportunity to do so.

20. Defendant Vagnini is not a health care professional, and he conducted the invasive and unreasonable search in an unsafe, unhygienic, and intentionally humiliating fashion.

21. Defendant Vagnini had no warrant to conduct such a search on Plaintiff K.F.

22. Plaintiff K.F. did not consent to Defendant Vagnini's invasive and unreasonable search and was helpless to resist, given Defendant Vagnini's status as a Milwaukee police officer.

23. As a direct and proximate result of Defendants' actions, as detailed above, Plaintiff suffered and continues to suffer, *inter alia*, bodily injury, pain and suffering, extreme mental distress, anguish, humiliation, shame, fear, and loss of freedom.

*Criminal Charges Against Vagnini, Knight and Other Milwaukee Officers*
*and Vagnini and Knight's Convictions*

24. In 2012, the Milwaukee District Attorney's Office conducted a secret investigation into allegations of illegal body cavity and strip searches by Milwaukee police officers, during which they interviewed and reviewed statements of dozens of victims and witnesses.

25. In October of 2012, the State of Wisconsin charged Defendants Vagnini and Knight and two other Milwaukee police officers with multiple felonies and misdemeanors related to illegal body cavity and strip searches of Milwaukee citizens.

26. Defendant Vagnini was charged with two counts of illegal cavity searches, eight counts of illegal strip searches, four counts of second degree sexual assault, one count of third degree sexual assault, two counts of fourth degree sexual assault, ten counts of misconduct in

public office, and one count of false imprisonment.

27. Defendant Knight was charged with one count of misconduct in public office and one count of conducting an illegal strip search.

28. In April of 2013, Defendant Vagnini negotiated a plea in which the seven felony sexual assault charges were dismissed, and he pleaded no contest to four felony charges for misconduct in public office and four misdemeanor charges for conducting illegal strip and body cavity searches of African American men.

29. In June of 2013, Defendant Vagnini was sentenced to 26 months in prison and 34 months of extended supervision.

30. In July of 2013, Defendant Knight negotiated a plea in which the felony count of misconduct in public office was dismissed, and he pleaded no contest to one misdemeanor charge of illegal strip search.

### *The City's Knowledge of Unconstitutional Strip and Cavity Searches*

31. As early as 2008, the Internal Affairs Division of the Milwaukee Police Department, as well as other authorities within the City of Milwaukee, were aware of multiple complaints about illegal and unconstitutional strip and body cavity searches of citizens.

32. The Internal Affairs Division ignored the clear and obvious pattern of illegal and abusive cavity and strip searches demonstrated by these civilian complaints, repeatedly rejected the complaints as meritless and refused to recommend discipline for the accused officers.

33. Subsequently, Milwaukee Chief of Police Flynn admitted, in April of 2013, that the Department had been receiving complaints for several years before it opened its own investigation of the allegations.

34. Milwaukee Police Department supervisors, including Defendants Captain Edith

5

Hudson and Sergeant Jason Mucha, also had knowledge of the numerous complaints of illegal strip and body cavity searches.

35. Undeterred by this knowledge, the policymakers, including but not limited to Defendants Flynn, Hudson and Mucha, failed to take any action to train, supervise or discipline the officers who committed these illegal searches.

36. Instead, supervisors rewarded several of the officers who engaged in these illegal searches with commendations for their aggressive police tactics, including commendations from Defendant Flynn.

37. Responsible authorities within the City of Milwaukee, including Defendant Flynn, concealed from the public and from judges, prosecutors and defense counsel that the Milwaukee Police Department had a *de facto* policy and practice which endorsed and encouraged illegal body cavity searches.

38. Following disclosure of the investigation by the Milwaukee District Attorney's Office of Milwaukee police officers for conducting unconstitutional and illegal body cavity and strip searches, the Milwaukee Police Department acknowledged its failure to adequately supervise and train its officers and changed its search policy to require authorization from higher ranking officials for each body cavity and strip search.

## Count I -- 42 U.S.C. § 1983
## Unreasonable Search and Seizure

39. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

40. The actions of Defendant Vagnini in illegally searching and physically abusing Plaintiff violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count II -- 42 U.S.C. § 1983
### False Arrest

41. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

42. The actions of Defendants Vagnini, Knight and the Unknown Defendant Officers, individually, jointly, and in conspiracy, in falsely arresting, searching, and/or imprisoning Plaintiff K.F., without probable cause, violated his Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count III – 42 U.S.C. § 1983
### Failure to Intervene

43. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

44. In the manner described above, Defendant Knight and the Unknown Defendant Officers had the opportunity, duty and ability to intervene on behalf of Plaintiff during Defendant Vagnini's invasive and unreasonable search, but failed to do so and thereby caused the injuries to Plaintiff set forth above.

### Count IV – 42 U.S.C. § 1983
### Conspiracy to Deprive Plaintiff of his Constitutional Rights

45. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

46. Defendants Vagnini, Knight and the Unknown Defendant Officers, acting within the scope of their employment and under color of state law, agreed between and among themselves to act jointly and in concert in order to deprive Plaintiff of his Fourth Amendment right to be free from unreasonable searches and seizures, as described in the various paragraphs of this Complaint.

47. In this manner, Defendants Vagnini, Knight and the Unknown Defendant Officers conspired by concerted action to accomplish an unlawful purpose by unlawful means.

48. In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated the unreasonable search and seizure of Plaintiff and was an otherwise willful participant in the joint activity.

49. As part of this conspiracy, Defendants Vagnini, Knight and the Unknown Defendant Officers agreed to conceal from responsible authorities that they had committed, in this case and several others, unlawful body cavity searches.

50. The misconduct described in this Count was undertaken willfully, intentionally, and/or with reckless indifference to Plaintiff's rights.

51. As a direct and proximate result of Defendants' conspiracy and actions in furtherance of the conspiracy, Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures was violated and he suffered the injuries set forth above.

## Count V – 42 U.S.C. § 1983
### *Monell* Policy and Practice Claim

52. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

53. The actions of Defendants Vagnini, Knight, and the Unknown Officers as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Milwaukee, its Police Department, its Fire and Police Commission, its Internal Affairs Division and/or its Police Chief.

54. At all times material to this complaint Defendant City of Milwaukee and its Police Department, Fire and Police Commission, Internal Affairs Division and/or Police Chief had interrelated *de facto* policies, practices, and customs which included, inter alia, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers who commit unreasonable searches and seizures; b) the police code of silence; and/or c) the encouragement of unreasonable searches and seizures and wrongful arrests.

55. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers have falsely arrested and/or unreasonably searched a criminal defendant.

56. The *de facto* policies, practices and customs of failing to properly hire, train, supervise, monitor, discipline, counsel and control police officers, the code of silence, and the encouragement of unreasonable searches and seizures and wrongful arrests are interrelated and exacerbate the effects of each other to institutionalize police lying and immunize police officers from discipline.

57. At the time of the incident giving rise to this complaint, officers of the Milwaukee Police Department, as a matter of widespread practice so prevalent as to comprise municipal policy, abused citizens in a manner similar to that alleged by Plaintiff in this Complaint on a frequent basis, yet the Milwaukee Police Department made findings of wrongdoing by officers in a disproportionately small number of cases.

58. Additionally, the involvement in, and ratification of, the unconstitutional actions of the Defendants by municipal supervisors and policymakers, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, further establishes that these acts were part of a widespread municipal policy, practice and custom. This involvement and ratification is further demonstrated, *inter alia*, by the Department's failure for several years to investigate the unconstitutional conduct of the

9

Defendants and other officers, or to discipline them, in this or other cases, for their unconstitutional conduct.

59. The aforementioned policies, practices and/or customs of failing to hire, train, supervise, monitor, discipline, counsel and control police officers, the police code of silence, and the encouragement of unreasonable searches and seizures and wrongful arrests, separately and together, proximately caused injury to the Plaintiff in this case, *inter alia*, because the Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that these denials would go unchallenged by these supervisors and fellow officers, from the Police Chief, Fire and Police Commission, on down, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct. Although dozens of citizens formally complained to the Milwaukee Police Department, detailing the policy, pattern and practice, for years the Department failed to investigate or take adequate responsive action.

60. But for the belief that they would be protected, both by fellow officers and by the Department, from serious career and criminal consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

61. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

### Count VI – 42 U.S.C. § 1983
### Supervisory Liability

62. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

10

63. Defendants Flynn, Hudson, and Mucha knew or reasonably should have known that Defendant Officers would violate citizens' constitutional rights in one or more of the ways described above, and/or knew or reasonably should have known that Defendant Officers had a pattern of engaging in improper searches, including public strip and cavity searches.

64. Defendants Flynn, Hudson, and Mucha facilitated, approved, condoned, turned a blind eye to, and/or purposely ignored Defendant Officers' pattern of misconduct.

65. As a result of this misconduct Plaintiff suffered the damages set forth above.

### Count VII – Indemnification

66. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

67. Wisconsin law, Wis. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

68. At all times relevant to this action, Defendants Vagnini, Knight, Flynn, Hudson, Mucha and the Unknown Defendant Officers committed the acts alleged above in the scope of their employment with the City of Milwaukee.

WHEREFORE, Plaintiff Kevin Freeman, Sr., as parent and legal guardian of his son, K.F., a minor, asks that this Court enter judgment in his favor and against Defendants City of Milwaukee, Chief of Police Edward Flynn, Captain Edith Hudson, Sergeant Jason Mucha, former Milwaukee Police Officer Michael Vagnini, Milwaukee Police Officer Jacob Knight, and Unknown Milwaukee Police Officers, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, KEVIN FREEMAN SR., hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: August 13, 2013　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Ben H. Elson
　　　　　　　　　　　　　　　　　　　　Ben H. Elson, IL Bar #6286106
　　　　　　　　　　　　　　　　　　　　John L. Stainthorp, IL Bar #3128243
　　　　　　　　　　　　　　　　　　　　Jan Susler, IL Bar #277840
　　　　　　　　　　　　　　　　　　　　Sarah Gelsomino, IL Bar #6298391
　　　　　　　　　　　　　　　　　　　　People's Law Office
　　　　　　　　　　　　　　　　　　　　1180 N. Milwaukee Ave.
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60642
　　　　　　　　　　　　　　　　　　　　(773) 235-0070
　　　　　　　　　　　　　　　　　　　　ben.elson79@gmail.com

　　　　　　　　　　　　　　　　　　　　Robin Shellow, #1006052
　　　　　　　　　　　　　　　　　　　　The Shellow Group
　　　　　　　　　　　　　　　　　　　　324 West Vine Street
　　　　　　　　　　　　　　　　　　　　Milwaukee, WI 53212
　　　　　　　　　　　　　　　　　　　　(414) 263-4488
　　　　　　　　　　　　　　　　　　　　tsg@theshellowgroup.com

　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff